## NATIONAL LABOR RELATIONS BOARD v. PENNSYLVANIA GREYHOUND LINES, Inc., et al.
### No. 6007.

Circuit Court of Appeals, Third Circuit.
June 15, 1937.

Robert B. Watts, Charles Fahy, Thomas I. Emerson, Philip Levy, and Stanley S. Surrey, all of Washington, D. C., for petitioner.

Ivan Bowen, of Minneapolis, Minn., and Charles H. Young, of New Castle, Pa. (M. H. Boutelle, of Minneapolis, Minn., of counsel), for respondents.

Before BUFFINGTON and BIGGS, Circuit Judges, and DICKINSON, District Judge.

BUFFINGTON, Circuit Judge.

The proposed order of the National Labor Relations Board, so far as clauses 1, 2, 3, and 5 are concerned, is approved. Sections (a) and (b) of clause 4 are approved, but approval is withheld from sections (c) and (d) of said clause, which read:

"(c) Withdraw all recognition from the Employees Association of the Pennsylvania Greyhound Lines, Inc., as representative of their employees, including the employees of the Pennsylvania Greyhound System, for the purpose of dealing with respondents concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work;

"(d) Post notices in conspicuous places in all of the places of business wherein their employees, including employees of the Pennsylvania Greyhound System, are engaged, stating that said Association is so disestablished and that respondents will refrain from any such recognition thereof."

The majority of the court feels that sections (c) and (d) should not be enforced because there is no warrant in the act for such action. No election has been held; the union enjoined has not been notified or heard, but, in advance of an election by the men, said union is for all practical purposes outlawed, and that without hearing.

BIGGS, Circuit Judge (concurring opinion, but dissenting in part).

Though I concur in the opinion of the court to the extent to which that opinion goes in enforcing the order of the National Labor Relations Board, none the less I dissent from that portion of the opinion which withholds approval of subsections (c) and (d) of paragraph (4) of the order. I think that the order of the Board should be enforced in full for the following reasons. The Board filed a petition in this court pursuant to authority conferred upon it by the provisions of the Act of Congress approved July 5, 1935 (Public No. 198, 74th Congress, 49 Stat. 453, § 10 (e), 29 U.S.C.A. § 160 (e) to the end that this court should compel the respondent corporations to comply with the provisions of an order of the Board requiring the respondents to cease and desist from certain labor practices found by the Board to be unfair and affecting interstate commerce within the meaning of the National Labor Relations Act. The respondents do not object to complying with the requirements of the first three paragraphs and the fifth and last paragraph of the Board's order, but they do object to carrying out the provisions of the fourth paragraph thereof for the reasons hereinafter set forth. The fourth paragraph of the order is as follows:

"4. Take the following affirmative action, which the Board finds will effectuate the policies of the Act:

"(a) Offer to Chester Lehman, Albert McKelvey, Stephen Mitchell, Lester Moberley, and John Rihr immediate and full reinstatement, respectively, to their former positions, without prejudice to their seniority or other rights and privileges previously enjoyed:

"(b) Make whole said Chester Lehman, Albert McKelvey, Stephen Mitchell, Lester Moberley and John Rihr for any losses of pay they have suffered by reason of their discharge by payment, respectively, of a sum of money equal to that which each would normally have earned as wages during the period from the date of his discharge to the date of such offer of reinstatement, computed at the wage rate stated in the findings of fact as the rate each was paid at the time of discharge, less the amount which each earned subsequent to discharge, as shown in the findings of fact:

"(c) Withdraw all recognition from the Employees Association of the Pennsylvania Greyhound Lines, Inc., as representative of their employees, including the employees of the Pennsylvania Greyhound System, for the purpose of dealing with respondents concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work:

"(d) Post notices in conspicuous places in all of the places of business wherein their employees, including employees of the Pennsylvania Greyhound System, are engaged, stating that said Association is so disestablished and that respondents will refrain from any such recognition thereof:"

The complaint upon which the order is based alleges that the respondent Pennsylvania Greyhound Lines, Inc., through wholly owned subsidiaries, owns and operates a motorbus transportation system

for the transportation of passengers and express for hire between points outside of the state of Pennsylvania and Pittsburgh, and that the respondent Greyhound Management Company, Inc., in conjunction with Pennsylvania Greyhound Lines, Inc., operates and controls a garage and repair shop at which the motorbusses of Pennsylvania Greyhound Lines, Inc., are serviced and repaired, to the end that they may be used for transportation of passengers and express between Pittsburgh, Pa., and points outside of the state of Pennsylvania. The complaint further alleges that seven employees at the Pittsburgh garage, engaged in maintenance and repair of the motorbusses, were discharged in result of their activities in joining and aiding a union known as Local Division No. 1063 of the Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, and that the respondents and their subsidiaries fostered and promoted a company union known as the Pennsylvania Greyhound Lines Employes Association, interfering in this association's affairs through activity in connection with elections held to select representatives. The complaint ends with the allegation that the acts complained of on the part of the respondents constituted violation of sections 7 and 8, respectively, of the National Labor Relations Act (29 U.S.C.A. §§ 157, 158).

The Board held extensive hearings in respect to these charges and found that the facts alleged in the complaint were true. It thereupon entered the order heretofore referred to.

It is necessary, however, to consider in some detail the arguments of the respondents and the effect of the order of the Board which it now seeks to have this court enforce.

At the oral argument and upon the respondents' briefs it was urged upon behalf of the respondents that they were not employers within the terms of the National Labor Relations Act (29 U.S.C.A. § 151 et seq.). The substance of this argument is that the discharged persons were not employees of the respondents, or either of them, but were employees of certain operating subsidiaries. There was ample evidence before the Board to sustain its finding that the discharged employees were in fact mainly employed by the respondent Pennsylvania Greyhound Lines, Inc., for the benefit of subsidiary corporations engaged in actual transportation operations in interstate commerce. It is further urged by the respondents that the National Labor Relations Board had no jurisdiction to act in the premises because no charge was filed with it on behalf of any existing labor organization, and that the charge was not filed on behalf of any employee of the respondents, or either of them. An examination of the charge shows that it purports to be filed by "Local No. 1063 of the Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, by Charlton Ogburn, Arthur E. Reyman, Attorneys for Petitioners," and that it was verified by Charlton Ogburn. There is testimony to the effect that the union was not fully organized, but there is evidence to the effect that some of the discharged men belonged to it. I think this charge was sufficient within the meaning of section 10 (b) of the act (29 U.S.C.A. § 160 (b). The complaint of the Board was based upon it and notice of hearing of this complaint was duly given to the respondents. But if there be any question of sufficiency of proof of existence of Local No. 1063 that question was disposed of by the parties themselves by the stipulation of December 7, 1935, in which all joined. It is the further contention of the respondents that the services of the discharged employees were dispensed with not for activity in fostering and aiding the union, Local No. 1063, but because of their inefficiency in connection with certain road failures of vehicles, because an accident had occurred at Warren, Ohio, caused by defective brakes, and because so much work had been transferred from the Pittsburgh garage that it was desirable to reduce the force of employees. The Board found, however, that five of the seven men who were discharged were discharged by the respondents for their activities in connection with the union, Local No. 1063, and that this was an unfair labor practice affecting interstate commerce within the meaning of section 8, subdivision (1), and section 2, subdivisions (6) and (7), of the act (29 U.S.C.A. §§ 158 (1), 152 (6, 7). It is further urged by the respondents as a defense to the order that the term "employee" within the meaning of section 2, subdivision (3), of the act (29 U.S.C.A. § 152 (3) will include only discharged employees who have not obtained other regular and substantially equivalent employment; and that the discharged men, or at

least some of them, have obtained such employment. The Board found that the five men in question had not obtained substantially equivalent employment within the meaning of the act.

Now, it is urged by the respondents that this court is not bound by the findings of fact of the Board, even if supported by adequate testimony, unless the facts conferring jurisdiction upon the Board in the controversy in question be found by this court to be present. In the case at bar these jurisdictional facts are present. The men discharged were employed in the repair shop maintained by the respondents at Pittsburgh and were engaged in work affecting interstate commerce. In this respect the case at bar seems entirely analogous to and is ruled by the decision of the Supreme Court in Texas & New Orleans Railroad Co. v. Brotherhood of Railway & Steamship Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034.

It was brought out as a fact at the hearings before the Board that the respondents had fostered an organization of the sort generally described as a company union. This organization, known as the Employee Association of the Pennsylvania Greyhound Lines, Inc., was held by the Board to be subject to the domination of the management of the Greyhound System through the respondents within the meaning of section 2, subdivision (5), of the act (29 U.S.C.A. § 152 (5). The Board further found that this use of the association by the management of the Greyhound System constituted unfair labor practices affecting interstate commerce prohibited by section 8, subdivision (2), and section 2, subdivisions (6) and (7), of the act (29 U.S.C.A. § 158 (2) 152 (6, 7), and therefore ordered that the respondents withdraw their recognition of the association and give notice of its disestablishment.

This court may reverse or modify the findings of the National Labor Relations Board only if they are found to be improper or are made without sufficient supporting evidence. Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229; Florida v. United States, 292 U.S. 1, 12, 54 S.Ct. 603, 608, 78 L.Ed. 1077; Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 736, 79 L.Ed. 1343; Federal Trade Commission v. Artloom Corporation (C.C.A.) 69 F.(2d) 36; Federal Trade Commission v. Hires Turner Glass Company (C.C.A.) 81 F.(2d) 362. In this case I think that the findings of the Board are proper and are supported by sufficient evidence.

The respondents contend that the act of disestablishment sought by the Board would require the respondents to dissolve the association, that is to say, to perform an affirmative act of dissolution. I do not believe this to be the case. The acts of disestablishment required of the respondents are negative in character. The respondents must withdraw their face and financial support from the association, but need take no affirmative action in respect thereto. When the respondents have done this and have posted notices to such effect the association will be "disestablished" in the sense of the order. "Disestablished" is the precise and just word. Here the question of jurisdiction again arises and is again disposed of by the ruling in Texas & New Orleans Railroad Co. v. Brotherhood of Railway & Steamship Clerks, supra.

No question of the constitutionality of the National Labor Relations Act raised in this case remaining, National Labor Relations Board v. Jones & Laughlin Steel Corporation, 57 S.Ct. 615, 81 L.Ed. ——; Washington, Virginia & Maryland Coach Company v. National Labor Relations Board, 57 S.Ct. 648, 81 L.Ed. ——; Virginian Railway Company v. System Federation No. 40, 57 S.Ct. 592, 81 L.Ed. 789, and all other questions being disposed of, I think that the National Labor Relations Board was right in entering the order herein referred to and that this court should support the position of the Board.

DICKINSON, District Judge (concurring in part and dissenting in part).

I fully concur in the order handed down except in two particulars, one of which at least may be of little practical importance.

The situation with which the Labor Board Act concerns itself is that the law should provide some method of disposing of labor controversies other than that of an appeal to brute force. Underlying it is the conviction that the individual employee is impotent to uphold his end in a bargain for employment. In union, however, there is strength, and hence the further conviction that employees must be organized in order to assure anything approaching equality in bargaining power with the employer. As a representative must thus speak for the organized employees, it fol-

lows that they must be free to choose their representative and that the employer must bargain with the one chosen. They are not free if the employer may, by the penalty of dismissal, forbid the organization, nor is the organization effective if the employer ignores its representative. Hence the law ·denounces as unfair practice the dismissal of employees for union activities or the refusal of the employer to recognize the representative of the employees. The right of an employer to select his own employees and to discontinue the employment for other reasons, cannot be ignored and is recognized in the Labor Act. Whether the discharge of an employee in a given case is for the one cause, or for other reasons, is a fact finding to be made. It is always a delicate question to decide and almost always a difficult one. The fact must, however, be found by some one, and the act commits the duty to the Labor Board. The undenied right of employees to organize implies the right to not organize, if the employees so decide, and likewise to organize in their own way. One method is for labor of a class, including employees of different employers, to form a union. The representative chosen by such a union may not be, and usually is not, himself an employee of the employer with whom he bargains. This leads to abuses generally recognized to exist. Another method is to limit membership in the organization to the employees of the employer concerned. An objection urged to this is that the representative, chosen by such an organization, would not be sufficiently independent of the employer to stand up for the interests of the employees.

It must further be recognized that, as every employee must be accorded full liberty to join the organization of his choice, by the same token he must be equally free to abstain from joining any.

We thus have presented the three problems which confront labor—collective bargaining, so-called company unions, and open or closed shops.

The Labor Act of 1920, which was the precursor of the present act, was based upon the thought of having an impartial Labor Board pass upon the merits of any labor controversy and publish their pronouncement. No machinery for enforcing their findings was provided. The expectation was that the parties to the controversy would accept the findings of the Board, or, if one or both refused, that the findings made would so focus public opinion upon the merits of the dispute that neither party would defy it. This expectation was, however, not met. In the present act the enforcement machinery provided is that the Board may make its findings and then appeal to the judicial power to enforce them.

Such is the proceeding now before us. The act in the clearest terms enjoins the courts to accept the fact findings of the Board if there is support for them in the evidence. I agree that there is evidence to support the findings of the Board and that they should be enforced by the process of this court. I see, however, no call upon this court to do more than this. Translated in terms of the order we are asked to make, this means making the order except part of paragraph 3 and subparagraphs b, c, and d ·of paragraph 4.

I am in accord with the order made except part of paragraph 3 and subparagraph b of paragraph 4.

I concur in paragraph 3 down to and including the word "employees" in the fourth line.

The act of Congress and the Board, by its findings, denounce as unfair practice the domination or control of any labor organization by the employer. There may be several of such organizations, one of which may be a so-called company union. The policy of the law requires the employer to keep its hands out of all, leaving the employees free to join any union or no union as the individual employee may· decide.

· My objection to the order as drawn is that it is open to the construction that it means a condemnation of a union limited in membership to the employees of any particular employer. I think the employees have the right to form such an organization, if they wish to do so. The only thing required is that the employer shall keep out of it. The like injunction requires him to keep out of all organizations, leaving the employees free to belong to any organization they please to join.

My only objection to subparagraph b of paragraph 4 is that the Board has made no finding of any sum which should be paid to discharged employees. If they are to be awarded anything the Board should find how much. Unless this is done the law has no control over what may be awarded.