## NATIONAL LABOR RELATIONS BOARD v. PACIFIC GREYHOUND LINES, Inc.

### No. 8453.

Circuit Court of Appeals, Ninth Circuit.

July 16, 1937.

Charles Fahy, General Counsel, Robert B. Watts, Associate General Counsel, Robert S. Erdahl, A. Norman Somers, and Philip Levy, Attys., National Labor Relations Board, all of Washington, D. C., for petitioner.

H. C. Lucas and J. D. Maatta, both of San Francisco, Cal., and Ivan Bowen and Bowen, Best, Flanagan & Rogers, all of Minneapolis, Minn. (M. H. Boutelle, of Minneapolis, Minn., of counsel), for respondent.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

WILBUR, Circuit Judge.

After notice and hearing the National Labor Relations Board made an order and has applied to this court by petition for the enforcement of its order in conformity with the National Labor Relations Act (29 U.S.C.A. § 151 et seq.). The jurisdiction of the Board to make the order is conceded and the provisions of the order to cease and desist contained in paragraph 1, subs. (a), (b), and (c), are not questioned by the respondent. Paragraph 2 of the order deals with the discharge and reinstatement of two employees, Vincent R. Sager and Henry A. Camy. With reference to Sager respondent contends that he was discharged on account of a rear-end collision for which Sager, the driver, was responsible, but apparently concedes that there was substantial evidence supporting the conclusion of

the Board that Sager was discharged on account of his Brotherhood affiliation.

With reference to the discharge of Henry A. Camy, the respondent contends he was discharged, not because of his activities in behalf of the Brotherhood, but because he lost a piece of freight on March 7, 1936, and a valuable letter on May 4, 1936, which had been intrusted to him while he was operating one of its busses. In support of this conclusion it is claimed that Camy admitted the loss of the piece of freight on March 7, 1936, and its value was deducted from his pay with his consent. He seemed willing to admit the loss of the letter on May 4, 1936, until under the leading questions propounded by a member of the Board he developed facts concerning the handling of this letter which cast some doubt upon his responsibility for the loss. We are not concerned, however, with the facts concerning the loss as there is no doubt that the charge that the letter was lost by Camy was made in good faith. The question which concerns us is as to whether or not the discharge of Camy which followed was in fact because of his activities in organizing the Brotherhood, as found by the Board.

The proof of such motive is wholly circumstantial. The respondent contends that the evidence does not support this finding. He was discharged by J. H. Hodge, assistant general manager, who testified that at the time he discharged Camy he did not know that Camy was a member of the Brotherhood, or engaged in any activity in connection with it, but did know he was a member of the Employers and Drivers Association. Respondent claims the only knowledge that Hodge had of the association of Camy with the Brotherhood was that two years before Camy was discharged he revoked his power of attorney to the Brotherhood and resigned from that organization. It is also claimed that the renewed activity of Camy after he rejoined the Brotherhood in October or November, 1935, occurred in Fresno, Cal., and as the office of assistant manager Hodge was in Los Angeles he was not likely to learn of such activities.

The question is a difficult and a serious one. It is difficult because in the teeth of a denial the proof of motive must depend upon acts and circumstances which can never be conclusive and when motive is attributed to an artificial person it involves probing the intent of all the officers concerned. It is a serious one because the right of an employer to discharge an employee is an inherent attribute of freedom and essential to the management of a business. The responsibilities of a common carrier for the negligence or mistakes of its employees is so great that the utmost freedom in selection and discharge of such employees should not be curtailed even if otherwise constitutionally permissible. The Board carefully weighed the conflicting evidence and stated its conclusions and the reasons therefor with careful attention to the difficult problem facing it. We refer to its decision for such analysis, as it sufficeth to say that there is substantial evidence to support its conclusion that the real motive for the discharge of Camy was because of his union activities and that the loss of the two items charged against him was merely a pretext seized upon to get rid of a competent and efficient driver. If the evidence went no further than to show the union activities of Camy, and his discharge, it would have been clearly insufficient, but the evidence covered the entire relationship of the parties over a long period of time, including warnings of possible discharge for trivial offenses if labor union activities were not suspended. Much of this was before the passage of the Wagner Act, but nevertheless admissible to show the attitude of the respondent's officials toward the effort to secure members of the Brotherhood from among its employees.

We conclude without further review of the evidence that there is substantial evidence to support the conclusion of the Labor Relations Board that both Sager and Camy were discharged because of labor union activities on behalf of the Brotherhood and that the order of the Board directing their restoration and payment of back pay less wages earned for that reason must be sustained.

In paragraph 2 of the order of the National Labor Relations Board, subs. (c), (d), and (e), down to the second subdivision of (e), deal with the relation of the respondent to the Drivers' Association and directs that the respondent withdraw all recognition of the Drivers' Association as a representative of its operators, and that it "completely disestablish the Drivers' Association, Pacific Greyhound Lines, *as its representative*" (italics ours), and that it notify its officers and agents that the Drivers' Association "is so disestablished and that it will refrain from any recognition

thereof and that it post notices to that effect," etc.

The Drivers' Association was not made a party to the proceedings. The amended complaint formulated by the Board as the basis of its action, contained allegations to the effect that the Pacific Greyhound Drivers Association had been initiated, formed, dominated, and interfered with, by the respondent and that the respondent had contributed support to that organization. It also alleges that by this means the respondent had interfered with and restrained and coerced its employees in the rights guaranteed them by the National Labor Relations Act and had thus been guilty of unfair labor practices. It alleged also that by forming the Drivers Association it had engaged in unfair labor practices within the meaning of section 8, subd. 2 of said act (29 U.S.C.A. § 158, subd. 2).

Notice of the hearing upon this complaint was issued and served upon the respondent. The Drivers Association was not notified of the hearing. It is clear that the provisions of the order which require the respondent both to refrain from discrimination with relation to labor organizations and from dominating and interfering with the administration of the Drivers Association is inconsistent with the order requiring them to disestablish the Drivers Association, if the word "disestablish" implies anything more than mere nonrecognition. But even as so limited, there is no basis in the complaint for an order determining with what agency the respondent must engage in collective bargaining. The statute has a comprehensive scheme for the determining of the Union which shall be the bargaining agency which is to represent the employees. No such question is involved in this proceeding which was limited to the effect of the discharge of employees and the effect of favoritism and domination of a labor union of its employees, commonly called a "company union." The National Labor Relations Board exercised its statutory power when it rectified the evils which were charged in the complaint and it went beyond those powers when it attempted to exclude the Drivers Association as a bargaining agency for its employees. That matter was not germane to the complaint before the Board and consequently was not involved in the proceeding and was unauthorized. See National Labor Relations Board v. Pennsylvania Greyhound Lines, 91 F.(2d) 178, decided by

the Circuit Court of Appeals, 3rd Circuit, June 15, 1937, not yet reported. When the time comes to determine the proper agency for collective bargaining on behalf of the employees, it may be necessary for the Board to determine such representative. Until that time the employer has done its full duty when it has refrained from interfering with such labor unions as may have been formed by its employees whether with or without its cooperation.

The application is denied as to those provisions dealing with the recognition of the Drivers Association contained in paragraph c, above mentioned, and the terms of the notice required to be posted by the respondent by subdivisions 2 and 3, subdivision e, par. 2, will be amended to include only the statement that it "will cease and desist" in accordance with paragraph 1 to be incorporated therein.

The order with reference to the reparations does not fix the amount to be paid to Sager and Camy. It does fix a standard for determining the rate of pay applicable to them since their discharge, but does not determine the amount to be deducted therefrom by reason of wages they may have earned since their discharge. No objection is raised to the form of the order, on this account but before the enforcement order is issued by this court this amount should be supplied and included in the order. We assume that no difficulty will be found in ascertaining the amount. If the parties cannot agree within ten days upon the amount to be included in the enforcement order, or to be paid, appropriate steps will be taken for its determination before the order is made.

HANEY, Circuit Judge (dissenting in part).

The National Labor Relations Act provides that petitioner "is empowered * * * to prevent any person from engaging in any unfair labor practice * * * affecting commerce." 29 U.S.C.A. § 160(a).

I concur in the holding that there is substantial evidence supporting the finding that respondent had engaged in an unfair labor practice as defined in 29 U.S.C.A. § 158, and that therefore the Board's order with respect to Sager and Camy should be enforced. I likewise concur in the holding with that the part of the Board's order requiring respondent to cease from dominat-

ing, interfering with or contributing financial or other support to the company union, inasmuch as the practice prohibited is an unfair labor practice as defined in 29 U.S.C.A. § 158(2).

Another unfair labor practice as defined is for an employer "To refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title." Section 158(5). In the latter section, the representatives of the employees mentioned are said to be those "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes." Section 159(a). The Board ordered respondent to:

"(c) Withdraw all recognition from [the company union] as the representative of its operators for the purposes of dealing with the respondent concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work; and completely disestablish [the company union] as such representative;

"(d) Immediately notify each and every one of its officers and agents in each of its divisions as well as each and every one of the representatives of [the company union], that [the company union] is so disestablished and that it will refrain from any recognition thereof;

"(e) Post notices to its operators in conspicuous places in all of its terminals on each of its divisions stating: (1) that [the company union] is disestablished as the representative of its operators for the purpose of dealing with it with respect to grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, and that it will refrain from any recognition thereof; (2) that it will cease and desist in the manner aforesaid; and (3) that such notices remain posted for a period of at least thirty (30) consecutive days from the date of posting."

It seems clear to me that the Board has jurisdiction to order as above recited, if some union, other than the company union, was the representative of respondent's employees as stated in 29 U.S.C.A. § 158(5). Such other union would be such representative if it was "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes." 29 U.S.C.A. § 159(a). But the Board would not have jurisdiction to make the order above recited,

if the company union was the chosen representative. So far as the record is concerned, it is not shown which union is the chosen representative. There certainly is no evidence that the Brotherhood is the chosen representative, nor that the company union is not the chosen representative. Therefore the Board exceeded its jurisdiction by the provisions above recited.

I dissent from that part of the opinion which requires the amount of the back pay to be included in our order. The act does not require it, and such action is a useless formality.

To summarize: In my opinion the order of the National Labor Relations Board, now before us, should be enforced in its entirety except those portions thereof designated 2(c) and 2(d) and 2(e-1). I think the portions of the order thus excepted and designated are not supported by either law or fact and that we should not order enforcement thereof.