**NATIONAL LABOR RELATIONS BOARD v. OREGON WORSTED CO.**
(two cases).
Nos. 8675, 8676.

Circuit Court of Appeals, Ninth Circuit.
Jan. 28, 1938.

Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, and Thomas I. Emerson and Owsley Vose, Attys., National Labor Relations Board, all of Washington, D. C., and Bertram Edises, Atty., National Labor Relations Board, of San Francisco, Cal., for petitioner.

Coan & Rosenberg and Abe Eugene Rosenberg, all of Portland, Or., for respondent.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

■ Respondent employer moves the court for an order requiring the petitioner to certify to the court a so-called report of respondent showing compliance with the recommendations of the trial examiner's report.

The motion is based on the theory that since such report states that respondent has complied with the recommendations of the trial examiner, the case is ended and the Board has lost its jurisdiction to make any orders we are called upon to enforce, whether in addition to or modification of the recommendations.

We do not so hold to be the character of the recommendations of the trial examiner. The remedy of the statute, National Labor Relations Act, 29 U.S.C.A. § 151 et seq., is in the orders of the *Board* to cease and desist and take the designated affirmative action. The recommendations of the trial examiner are no more than *recommendations* to the Board as to its action.

■ The Board may accept or reject any and add to the accepted recommendations such other orders as seem warranted by the evidence and its findings. In this case, the facts proved before the examiner are claimed by the Board to support an order made by it for reinstatements and payment of back wages, on which no recommendations at all were made by the examiner. Hinc illæ lachrimæ.

While performance of all the recommendations by the examiner covering every phase of the complaint may lead the Board, in its administrative discretion, to dismiss the petition, such performance gives no right to the respondent to insist on such dismissal. The objective of the act is the Board's orders and the examiner is not the Board for such objective. The regulation (Art. I, § 5) defining the trial examiner as the Board, its member, agent, or agency conducting the hearing, does not make the examiner the Board in other Board functions.

■■ Furthermore, a mere report by respondent that there has been performance of the examiner's recommendations does not establish it as a fact. It is a mere ex parte statement upon which the Board may take further evidence as to its verity—but here again to determine the administrative question whether it will continue the proceeding for all or part of the remedial action sought. Since the recommendations of the examiner for Board orders may be rejected or added to by the Board, performance by the respondent of the recommended acts offers no reason for the respondent not excepting to the examiner's findings or the procedure before him.

Motion denied.

DENMAN, Circuit Judge.

I have concurred in this decision, though it may well be that we have the discretion to consider the question whether the portions of the record sought to be brought before us may affect our action in some way not sought by the respondent's motion. If we have such discretion, it does not

seem wise to exercise it in view of the requirement of the statute for prompt disposition of the other questions of paramount importance in the litigation.

The argument on the motion covered a wider area than the issue raised by it. It succeeded a similar wider area of discussion of the same questions in the case of National Labor Relations Board v. American Potash & Chemical Co., No. 8681, subject to further briefing. Several of these questions arising in that discussion, pertinent, as I see it, to this further briefing, are here stated for guidance in that briefing, as well as the briefing in the case at bar. What is here stated is my personal viewpoint, in which my associates have expressed no opinion.

The Employees' Mutual Council is alleged and found by the Board to be a union of employees of respondent, dominated in its formation and conduct by the respondent, their employer. It has not appeared amicus curiæ or otherwise, yet we are called upon by the Board to order its paralysis in its major function as a labor union. It is a situation foreign to American concepts of justice, in which the court must exercise meticulous care in the determination of the rights of the absent parties to be affected by our action.

Among other orders made on June 11, 1936, by the Board, sought by the Board to be ordered by this court, are that the employer, the single respondent, shall cease and desist from domination of or interfering with the union, and in addition:

"(c) Withdraw all *recognition* from the *Employees' Mutual Council* as representative of its employees for the purpose of dealing with respondent concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work; and

"(d) Post notices in conspicuous places on each of the bulletin boards of its mill at Portland, Oregon, stating: (1) That the Employees' Mutual Council is *disestablished,* and that respondent will refrain from any recognition thereof * * *." (Italics supplied.)

If we grant an order that the respondent shall "withdraw all recognition" of the union and "post notices * * * That the Employees' Mutual Council is disestablished, and that respondent *will* refrain from any recognition thereof," our order will prevent the union in the future from bargaining with the respondent for better wages, hours, or other working conditions, and make useless its right to strike to attain such betterment.

We have held we cannot exercise such power over the freed union in National Labor Relations Board v. Pacific Greyhound Lines, Inc., 9 Cir., 91 F.2d 458. Petitioner's briefs in both the cases now under submission seek to have us overrule the principle so established in that case.

In that case we confirmed the findings of the lower court that the employer, as charged, had dominated the union, first, in its organization, and, second, in the conduct of its affairs thereafter. The violations by the employer of the provisions of the statute against unfair labor practices were as subversive of the purposes for which the act was created to prevent and as completely proved as they could be in any case. However, in that case, while holding constitutional the orders made restraining the employer, we found ourselves bound by another provision of the Constitution concerning punitive restriction on the union theretofore, but no longer, dominated by the employer, which restriction would have prevented it thereafter from any negotiations with the employer. The association of human beings in the union had not had its or their day in court as guaranteed to them in the Fifth Amendment against action by the federal government. That Amendment provides: "No person shall be * * * deprived of life, liberty, or property, without due process of law."

We held that since neither the members of the association nor their association, the union, were named or charged in the complaint or had appeared in the proceeding, we could not order that their union be "disestablished"; that word in the context meaning the prevention of the union from seeking, by negotiation or otherwise, better labor conditions from their employer.

A part of the "liberty" of the Greyhound employees in interstate commerce is the liberty to associate themselves in unions for the purpose of their mutual benefit, guaranteed by the act itself. Section 7, 29 U.S.C.A. § 157.

In this and in the case of National Labor Relations Board v. American Potash & Chemical Co., supra, the employees are engaged in intrastate production, the Congress obtaining its right to regulate the industrial relations in these industries because of the effect, if any exist, of the

intrastate production upon interstate commerce. National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 32, 33, 57 S.Ct. 615, 621, 622, 81 L. Ed. 893, 108 A.L.R. 1352. Hence whether the employees' right to organize is or is not one guaranteed by the act, it is held by them as residents of the state of their employment.

The Congress may have the power to deprive them of that liberty if, by yielding their individuality and personal freedom to the dominion of the employer, an evil effect is produced upon interstate commerce. However, our ruling, in effect, was that if this power exist, it can no more be exercised without the essentials of due process of law, than that any one of the union members could be convicted of murder of, say, the respondent's president, in a criminal trial in which, though he never became a party defendant nor had any chance to make a defense, he was proved and adjudged guilty and sentenced to be hanged.

The very fact that the consequences of their associating together and yielding to the dominion of the employer may be so disastrous to the well-being of all those employed in the particular industry, makes it the more necessary that they be brought into the action by appearance or service of process and be given the opportunity to show that they had not committed an offense so heinous.

The petitioner urges that our holding in the Greyhound Case, in effect as above stated, is not warranted in view of the decision of the Supreme Court in Texas & N. O. R. Co. v. Railway Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034, in which (1) the question of due process and liberty of laborers associated in the union, alleged to be employer dominated, was not presented or commented upon; (2) another union was ordered recognized by the court as the representative of the employees *until* a vote of the employees determined otherwise, whereas the act here under consideration specifically prescribes a procedure, not taken or ordered here, for determining by the employees what body shall be the bargaining agency.

In the further briefing on the proposal to overrule the Pacific Greyhound Case, there should be considered that:

(1) The remedy created in *29 U.S.C.A.* § 160, section 10 of the National Labor Relations Act, provides specifically only for restricting the acts of the employer and the conferring of the benefit of reinstatement and back wages on the employee. With this specific provision for the remedy, do the general words "take such affirmative action * * * as will effectuate the policies of this chapter" confer jurisdiction over the union which the act provides shall be freed of the dominion of the employer? That is to say, is the purpose of the Congress to free the union from employer domination only to destroy its principal function and right, i. e., to strike or threaten to strike against the employer and negotiate with him for better labor conditions?

Are we to ignore the common occurrence of a union, formerly employer dominated, becoming a vigorous representative of its employee-members as soon as freed from such dominance, and continuing its entity as an affiliate of one or another of the national organizations of labor unions?

(2) No provision of the act requires the presence of anyone but the employer as party defendant to the charge. There is a provision for allowing intervention by other parties, with the permission of the Board. Does this mean that the Board has power, on its own motion, to summon a union and, having served its summons, for which there is no provision in the act, but, say, in a manner akin to the service on the employer, make the union subject to a punitive restraint destructive of one of its primary functions? Did the Congress confer this power by the general phrase in its remedial clause of section 10 above quoted?

(3) Section 10 provides only for a complaint and notice of hearing to be served on "any person named in the complaint has engaged in or is engaging in any *such* unfair labor practice." "Such" unfair labor practices are those in the previous section 8, 29 U.S.C.A. § 158, which provides only for unfair labor practices by an "employer." Is power created for the punitive disestablishing of the union from strike supported negotiations with the employer, where the only complaint to be made, served and heard is of unfair labor practices of the *employer?*

(4) Assuming that under the definition section 2(2) of the act, 29 U.S.C.A. § 152 (2), any or all members of the union were deemed "person[s] acting in the interest of an employer" and hence (anomalously) "employers" within the meaning of sections 8 and 10, then must they not be named in

the complaint and served as provided in section 10? Can punitive restrictions on them be ordered by this court unless they are named as "employers" in a complaint served on them?

It is therefore requested that in further briefing the questions here suggested be considered.