**NATIONAL LABOR RELATIONS BOARD v.
OREGON WORSTED CO.**

Nos. 8675, 8676.

Circuit Court of Appeals, Ninth Circuit.
April 11, 1938.

Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, and Laurence A. Knapp, Thomas I. Emerson, Owsley Vose, and Bertram Edises, Attys., National Labor Relations Board, all of Washington, D. C., for petitioner.

Abe Eugene Rosenberg and Coan & Rosenberg, all of Portland, Or., for respondent.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Involved here are separate petitions of the National Labor Relations Board for the enforcement of two orders issued against respondent under authority of section 10(c) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 160(c).

Respondent is an Oregon corporation engaged in the business of manufacturing, selling, and distributing yarns and other woolen products. In case No. 8675 a charge was filed with the Board by the

United Textile Workers of America, Local No. 2435, alleging that respondent had engaged in certain unfair labor practices affecting commerce. A complaint was issued charging, in substance, that respondent had dominated and interfered with an organization of its employees known as the "Employees Mutual Council," and had discharged and refused to reinstate one Sidney Girard because of his membership and activities in the Textile Workers Union.

After a hearing before a trial examiner, the Board, in June, 1936, made findings and rendered its decision. Respondent was ordered to cease and desist from coercing its employees in the exercise of their right to organize, and from encouraging membership in the Council, or discouraging membership in the Union, by discrimination in regard to hire or terms of employment, and from dominating the Council. It was directed that respondent (a) offer to Sidney Girard immediate reinstatement to a position substantially equivalent in wages and in type of work to that held by him prior to his discharge, (b) make Girard whole for any loss of pay suffered by reason of his discharge, (c) withdraw all recognition from the Council as representative of its employees, and (d) post notices stating that it would cease and desist as aforesaid.

Respondent has asked leave to adduce additional evidence, pursuant to section 10 (e) of the act, 29 U.S.C.A. § 160(e), concerning the following matters: It is claimed that prior to the inauguration of proceedings in this court, respondent had already recognized the United Textile Workers Union, Local No. 2435, as bargaining representative of the members thereof, and had otherwise complied with the terms of the Board's order, except the direction concerning the reinstatement and compensation of Girard. It is contended that as to such portions of the order as were complied with the case has become moot.

The petition to adduce evidence of the claimed compliance is denied. As said in National Labor Relations Board v. Pennsylvania Greyhound Lines, 303 U.S. 261, 58 S.Ct. 571, 576, 82 L.Ed. ——, "An order of the character made by the Board, lawful when made, does not become moot because it is obeyed or because changing circumstances indicate that the need for it may be less than when made."

Respondent contends that there is no substantial evidence to support the finding and order relative to the discharge of Sidney Girard. It is claimed that Girard was not discharged because of any activity on behalf of the Textile Workers Union, but, on the contrary, that his discharge was the result of a violation of a company rule prohibiting employees from going into departments other than the ones in which they are employed, unless their duties take them there.

Without detailing the Board's findings with respect to unfair labor practices extending over a period of several years, it is sufficient to say that the record discloses a determined effort on the part of the respondent to prevent the unionization of its plant.

Girard was employed by respondent September 30, 1935, to pack hand and machine yarn and to bale, weigh, and check it. At the time he applied for work he was asked by respondent's personnel manager whether he intended to join a labor union, and was told that his chances of keeping in the good graces of the company would be better if he refrained from having any union affiliations. About the middle of October he became a member of the Textile Workers Union. He was asked to and did accept the presidency of the Union for the stated reason that he was unmarried and his discharge would be of less consequence than that of other members having dependents.

There was no complaint concerning Girard's efficiency. On one occasion he was warned by his foreman against talking too much while on duty, and later was told that it was contrary to the rules to visit other departments when on duty except on company business.

On November 21, 1935, Girard brought to the plant a number of leaflets, announcing a mass meeting of respondent's employees. Prior to going on duty, he went through the mill, posting leaflets on each of the departmental bulletin boards, and handing a few directly to employees. Some leaflets were left where employees could get them. He hurried through the mill, not stopping to speak to any one except to say a few words in passing to two foremen and the president of the Council. He then distributed some leaflets near the entrance to employees about to go on duty, and placed a number in cars parked near the mill.

When respondent's personnel manager saw one of the leaflets posted on a bulletin

board, he immediately informed respondent's manager of the fact. Later in the day a meeting of all the foremen was called to determine what departments Girard had visited, whether he had violated the rules of respondent, and if he had, in what manner he should be disciplined. A few hours after the distribution of the leaflets Girard was told to go to the office where a check would be waiting for him. The personnel manager told him he was discharged for the reason that it was against the policy of the company to permit any of the employees to go through the plant and talk with the workers.

The Board found that there was no written rule of the character mentioned, and Girard testified that he understood it to have application only to employees while on duty. It appears from the evidence that, if any such rule existed, it was not strictly enforced. The secretary of the Council (the company union) was accustomed to walk through various departments collecting dues, and active Council members visited, without admonition, departments in which they had no duties. Notices concerning Council activities were frequently posted on the bulletin boards. All of these activities were definitely violations of the rule said to justify Girard's discharge; but the record discloses that none of the other employees engaged in these activities were either warned or disciplined.

The Board found that Girard was discharged because of his activities on behalf of the Union and not for violating any rule of the respondent. The findings of the Board as to facts, if supported by evidence, are conclusive. It was for the Board, not for this court, to draw inferences from the evidence; and it is plain that the inference drawn in this instance was fully warranted by the testimony.

The further contention is made by respondent that, irrespective of the reason for Girard's discharge, the Board should not have ordered his reinstatement. The argument is based on evidence produced at the hearing before the trial examiner, early in 1936. At that time respondent, for purposes of impeachment, introduced in evidence a judgment of a state court, dated in November, 1934, adjudging Girard guilty of malicious destruction of property and sentencing him to imprisonment therefor for a period of four months. The precise circumstances surrounding the offense are not disclosed by the record. Girard testified that the incident was a consequence of his having become intoxicated.

The conviction was admittedly not the reason for Girard's discharge. For all we know, the respondent, under other circumstances, would have continued the man in his work after having learned of this occurrence. An inquiry into the circumstances might have satisfied respondent that he was worthy of continued employment. No attempt was made to show that the offense of which he had been convicted was in the nature of sabotage. We are unable to say that the fact of the conviction is of such moment that the Board failed to act properly in disregarding it.

### Case No. 8676.

After the Board had made its order in the case heretofore discussed, the Textile Workers Union charged respondent with engaging in other unfair labor practices affecting commerce; and in January, 1937, the Board issued a second complaint. This complaint is based on an alleged interference by respondent with the conduct of an election which the Board had scheduled for December 21, 1936. The circumstances surrounding the second charge against the company, as disclosed in the unchallenged findings, are as follows:

In August, 1936, the Union filed with the Board a petition requesting an investigation and certification of representatives of respondent's employees under section 9 (c) of the act, 29 U.S.C.A. § 159(c). It was stated in the petition that the Union represented 275 of the 400 people employed by respondent. An investigation was authorized and a hearing scheduled.

In November, 1936, a large majority of the workers in respondent's plant went on strike because of the refusal of the respondent to meet or deal with the Union. When the strike occurred, respondent's manager made a public announcement that he would shut down the mill before he would bargain with the Union. At the hearing before the Board on the petition of the Union for an election and certification of representatives, the attorney for respondent stated that the latter's operations had been definitely terminated, and arrangements were then being made to liquidate its inventory, equipment, and accounts receivable. In the newspapers and otherwise, the respondent, prior to the date of the election, ordered by the Board, sought to induce among the employees the belief that the

plant would be liquidated rather than continue to operate if collective bargaining with the Union were to become necessary. So effective were these threats that the Union petitioned the Board to call off the election, and this was done.

The respondent announced through the columns of the Portland Oregonian that the election had been canceled because it was realized that the employees would vote against the Union. A state conciliation board then made recommendations for the settlement of the strike and proposed to the Union that it be called off, respondent to take back the employees without discrimination and the Union to drop all charges before the Board. Respondent's plant was thereupon reopened and operations immediately resumed.

From the evidence taken at the hearing, the Board found that respondent's declarations with respect to liquidating were not made in good faith, but were false and made for the purpose of intimidating its employees, discouraging membership in the Union, and breaking the strike. It also found that certain unwarranted charges had been circulated by respondent to the effect that bombs had been placed in automobiles of its employees unsympathetic with the Textile Workers Union, by those active in the affairs of the latter. These charges were found to have been made without any knowledge or information on respondent's part pointing to their truth.

In this intermediate report the trial examiner made certain recommendations. These did not include reinstatement of employees on strike. The respondent thereupon filed with the Regional Director of the Board a certificate of compliance with the recommendations of the trial examiner.

The Board, however, went further. In addition to requiring respondent to cease and desist from interfering with or coercing its employees in the exercise of the rights guaranteed by the act, it was directed that respondent, upon application, offer immediate and full reinstatement to those employees who were on strike on December 21, 1936, the date of the intended election, dismissing if necessary all persons hired for the first time after that date; and to place upon a preferred list for employment those in the above category for whom work was not immediately available. Respondent was also ordered to make whole the said employees for any loss of pay suffered by reason of any refusal of their applications for reinstatement.

When the Board presented here its petition for the enforcement of its order, respondent asked that it be required to certify to the court the report of respondent showing its compliance with the recommendations of the trial examiner. We denied this request. National Labor Relations Board v. Oregon Worsted Co., 9 Cir., 94 F. 2d 671.

■ Respondent has now presented a petition for leave to adduce additional evidence under section 10(e) of the act, 29 U. S.C.A. § 160(e), in support of its claim that it has complied with the directions of the Board. It alleges that in May, 1937, it entered into an agreement with the United Textile Workers Union, Local No. 2435, substantially in accord with the order of the Board thereafter made.[1] The contention is that as to each matter contained in the order of the Board and now sought to be enforced in this court, the questions raised have become moot and there is now no controversy, complaint, or grievance relating thereto. No other defense is urged.

As indicated in our opinion disposing of the prior case, the order has not become moot merely because it has been obeyed. The evidence sought to be adduced is immaterial, and the petition of respondent is denied.

It is fair to say that the agreement said to have been made with the Textile Workers Union was entered into at a time and under conditions unfavorable to effective bargaining on the part of the Union. The Board's directions were in part intended to restore the status quo.

Enforcement of the orders herein is hereby granted, effective immediately.

---

[1] The Board's order was made in July, 1937.