**In the Matter of the LICENSE OF Nick TOPIK, to Act as a Real Estate Broker in the State of Utah.**

No. 880087–CA.

Court of Appeals of Utah.

Sept. 2, 1988.

David L. Wilkinson, Atty. Gen., Stephen G. Schwendiman, Chief, Asst. Atty. Gen., Sheila Page (argued), Asst. Atty. Gen., Tax & Business Regulation Div., Salt Lake City, for appellant.

Robert A. Echard (argued), Gridley, Echard & Ward, Ogden, for respondent.

Before BILLINGS, GARFF and ORME, JJ.

## OPINION

GARFF, Judge:

This appeal arises from the district court's decision to overturn the Real Estate Commission's (Commission) order suspending respondent Nick Topik's, real estate license for one hundred fifty days, followed by a three year probation.

Respondent is licensed with the Utah Department of Business Regulation's Real Estate Division (Division). On February 2, 1984, based upon eight fact situations, the Division charged him with violations of Utah Code Ann. §§ 61–2–11(1), –(2), –(8), –(9), –(15) and –(16) (1983), and violations of Rules 11.f and 11.g of the Rules and Regulations of the Real Estate Commission (1983). On April 13, 1984, the Division amended its petition to include a ninth fact situation charging respondent with an addi-tional violation of Utah Code Ann. § 61–2–11(6) (1983).

An administrative law judge (A.L.J.) conducted a hearing on the amended petition on August 27 and 28, 1984. The A.L.J. dismissed fact situations Nos. 5 and 8, but concluded that respondent was guilty of violating Rules 11.f [1] and 11.g [2] along with several subsections of section 61–2–11. The A.L.J. recommended that respondent be placed on probation for three years in addition to the one hundred fifty day suspension of his license. The Commission and the Division confirmed, approved, and adopted the A.L.J.'s recommendations.

Respondent appealed to the district court pursuant to Utah Code Ann. § 61–2–12(1)(c) (1983),[3] arguing that section 61–2–11(8) is unconstitutionally vague and uncertain. The district court held that the "unworthy and incompetent" standard contained in section 61–2–11(8) was too general and did not meet the required elements enunciated in *Vance v. Fordham*, 671 P.2d 124 (Utah 1983).[4] Consequently, the court rejected the A.L.J.'s findings of all violations under section 61–2–11(8) "except and unless the broker's conduct also violated one or more of the other seventeen listed proscribed activities" under section 61–2–11. Further, the trial court reasoned that the A.L.J. was not a "peer," that much of respondent's conduct was either innocuous or resulted in no damage or injury to anyone, and that there were no violations as to the specifically proscribed provisions of section 61–2–11(9) and Rules 11.f and 11.g. The court, therefore, reversed the Commission's order. The Commission appealed the decision pursuant to Utah Code Ann. § 78–2a–3 (1987).

---

1. Rule 11.f states that, "[u]nder no circumstances should a broker or salesman advertise a property at a lower price than listed without the written consent of the seller." *Cf.* Utah Admin. Code R. 174–1–6(6.4) (1987–88).

2. Rule 11.g provides that, "subjecting seller to liability of paying two commissions is prohibited." *Cf.* Utah Admin.Code R. 174–1–6(6.6) (1987–88).

3. The Utah Administrative Procedure Act, Utah Code Ann. § 63–46b–16(1) (1988), effective Jan-uary 1, 1988, provides that all final agency decisions through *formal* adjudicative proceedings will be reviewed by the Utah Supreme Court or Court of Appeals. Therefore, the district court will no longer function as an intermediate appellate court except to review *informal* adjudicative proceedings *de novo* pursuant to Utah Code Ann. § 63–46b–15(1)(a) (1988).

4. See infra page 5 for discussion of the three-prong *Vance* standard.

The issues raised on appeal are: (1) whether the general disciplinary standard of "being unworthy or incompetent," contained in section 61–2–11(8), is unconstitutionally vague and indefinite; (2) whether the Commission has authority to delegate its peer review powers to an A.L.J. under Utah Code Ann. §§ 61–2–5.5(1)(c) (1983) and 61–2–12(1)(a) (1983); and (3) whether the Commission's affirmation of the A.L.J.'s decision was reasonable or rational.

■ This Court examines an appeal from a lower court's review of an administrative decision as if the appeal had come directly from the agency. *Bennion v. Utah State Bd. of Oil, Gas & Mining*, 675 P.2d 1135, 1139 (Utah 1983). We need not defer to the lower court's findings and conclusions. *Id.* at 1139; *but see Davis County v. Clearfield City*, 756 P.2d 704, 710 n. 8 (Utah Ct.App.1988).

Respondent first challenges the constitutionality of the general standard found in section 61–2–11(8). The statutory language setting forth this general standard is as follows:

> The commission, with the concurrence of the executive director, may impose a civil penalty in an amount not to exceed $500, or suspend, revoke, or deny reissuance of any license issued under this chapter at any time ... if the licensee in performing or attempting to perform any of the acts specified in this chapter is found guilty of: ... [b]eing unworthy or incompetent to act as a principal broker, broker or salesman in such manner as to safeguard the interests of the public....

Utah Code Ann. § 61–2–11(8) (1983).

Respondent argues that this "unworthy and incompetent" standard is vague and does not reasonably notify a person of the act(s) prohibited since the Division has not published uniform objective standards or definitions of "unworthy and incompetent." He relies upon *Athay v. State Department of Business Regulation*, 626 P.2d 965 (Utah 1981) to support his position that uniform, published and objective standards are required in order to pass due process muster, and that a general statutory standard, such as "unworthy and incompetent," is too vague and indefinite.

■ When reviewing an administrative agency's interpretation of general law, this court applies a correction of error standard of review, giving no deference to the agency's interpretation. *Department of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601, 608 (Utah 1983). In *Athay*, the Department of Registration refused to permit a prospective licensee to take an examination required to become certified as a psychologist because her doctoral degree program did not meet the statutory requirement of "a program of studies whose content was primarily psychological." *Athay*, 626 P.2d at 966. In reversing that action, the Utah Supreme Court held that the Department's failure to establish guidelines outlining the content of a course curriculum sufficient to meet the requirement of being "primarily psychological," constituted arbitrary action. The court found that prospective professionals who invest large amounts of time and money in education are entitled to have specific, published guidelines identifying objective, identifiable standards required for professional certification or licensure. *Id.* at 968.

Two years later, the same issue of indefinite general standards arose in a case involving the Department of Business Regulation's revocation of a physician's license for "unprofessional conduct." *Vance*, 671 P.2d at 124. The Utah Supreme Court found that, applied to services to clients,

> a general statutory standard like "unprofessional conduct" is acceptable for three reasons: (1) The subject of professional performance is too comprehensive to be codified in detail. (2) Members of a profession can properly be held to understand its standards of performance. (3) Standards of performance will be interpreted by members of the same profession in the process of administrative adjudication.

*Id.* at 129. In distinguishing *Vance* from *Athay*, the Utah Supreme Court held that the articulated guidelines required to *become* a licensed professional are unnecessary when applying the statutory standard

of "unprofessional conduct" to subsequent performance by an already licensed professional. *Id.* "[T]he public can receive greater protection from a certified professional than from an applicant for certification, because a certified professional can be held to a higher standard of awareness of the profession's uncodified standards ... in services to clients ... than an applicant." *Id.* Once a professional is certified, it is appropriate to rely upon the self-governing functions and standards of the profession. *Id.*

In the present case, respondent is already licensed as a real estate broker and is charged with violating a general statutory standard while providing professional services to his clients. Therefore, to be upheld, the general statutory standard of "unworthy and incompetent" must be comparable to the "unprofessional conduct" standard of *Vance* to comply with due process requirements and avoid the brand of vagueness. Respondent does not contest the first two prongs of *Vance*. He contends, however, that the third prong requires that "unworthy and incompetent" be interpreted by the professional's peers, and that the Commission delegated its peer review powers to an A.L.J. who was not a real estate broker and, therefore, not a peer.

Consequently, we must first determine whether the Commission is composed of respondent's "peers." Utah Code Ann. § 61–2–5.5(2) (1983) provides, in part, that:

> [t]he commission shall be comprised of five members appointed by the governor and approved by the senate. Four of the commission members shall have at least five years' experience in the real estate business and shall hold an active principal broker's, broker's, or salesman's license. One commission member shall be a member of the general public.

Thus, under this section, any decision must be made by a five member panel, four members of which are licensed brokers.

In the present case, four brokers on the Commission were well qualified to meet the statutory prerequisites for sitting as a panel of peers. However, the issue remains as to whether the Commission had authority to delegate power to conduct the hearing to an A.L.J.

Several provisions of Title 61, Chapter 2 specifically state that the Commission may designate a hearing to be conducted before an A.L.J. rather than before the Commission itself. Utah Code Ann. § 61–2–5.5(1)(c) (1983) provides, in pertinent part, that "[t]he commission shall ... [c]onduct all administrative hearings *not delegated by it to an administrative law judge* relating to the licensing or conduct of any licensee under this chapter...." (emphasis added). Further, Utah Code Ann. § 61–2–12 (1983) provides that "[b]efore revoking, suspending, or denying reissuance of any license the division shall schedule a hearing before the commission *or an administrative law judge designated by it* and give notice in writing to the licensee...." (emphasis added).

■ These two provisions merely codify the principles of administrative law which allow an administrative adjudicatory body to delegate its task, at least preliminarily, to a hearing examiner. *See Morgan v. United States*, 298 U.S. 468, 479, 56 S.Ct. 906, 911, 80 L.Ed. 1288 (1936); *Melrose M.S. Bd. of Educ. v. State Bd. of Educ.*, 106 N.M. 129, 740 P.2d 123, 125 (1987); *Crow v. Industrial Comm'n*, 104 Utah 333, 140 P.2d 321, 326 (1943) (Wolfe, concurring). Further, they do not expressly limit the Commission's authority to delegate cases to an A.L.J. Therefore, we conclude that the Commission may delegate any case to an A.L.J. for hearing and initial decision, not just those cases alleging specific violations proscribed under section 61–2–11.

In addition, Utah Code Ann. § 61–2–12(1)(b) (1983) (emphasis added) provides, in part, that:

> [t]he commission or the administrative law judge shall render a decision within 60 days after the completion of any hearing. *The executive director and the commission concurrently shall make the final decision* and shall immediately notify the parties to the proceedings, in

writing, of their ruling, order, or decision.

The Commission argues, pursuant to section 61–2–12(1)(b), that the A.L.J.'s decisions are merely advisory in nature and are not binding upon the Commission, the final decision maker. Following a hearing, the A.L.J. recommends to the Commission his or her findings of fact, conclusions of law and, if applicable, sanctions. If, after careful consideration, the Commission and the executive director find the A.L.J.'s recommendations to be satisfactory, they confirm and adopt the recommendations.

■ We note that the Commission is not bound to defer to the A.L.J.'s recommendations. Administrative case law demonstrates that unless the enabling statute specifically provides otherwise, the A.L.J.'s decisions are advisory in nature and are not binding upon the ultimate decision maker. *See St. Joseph Stock Yards Co. v. United States*, 298 U.S. 38, 51–53, 56 S.Ct. 720, 725–726, 80 L.Ed. 1033 (1935); *Heitmeyer v. F.C.C.*, 68 App.D.C. 180, 95 F.2d 91, 96–8 (D.C.Cir.1937). The final decision maker may accept, add to, reject, or modify the recommendations of the A.L.J. as warranted by its review of the evidence and findings. *N.L.R.B. v. Oregon Worsted Co.*, 94 F.2d 671, 672 (9th Cir.1938).

■ Therefore, we conclude that the Commission may preliminarily delegate its peer review authority to an A.L.J. pursuant to section 61–2–12(1)(a). The findings, conclusions and sanctions of the A.L.J. are merely recommendations which, after a thorough review, the Commission may adopt, reject, modify, or enhance. We find that the general standard found in section 61–2–11(8), "being unworthy and incompetent," meets the three justifications required by *Vance* and is not vague and indefinite so long as the Commission carefully considers the A.L.J.'s recommendation and reviews the evidence and findings prior to rendering its final decision. Of course, as in this case, the final decision maker's review is enhanced by detailed factual findings. The findings in this case described each fact situation with such particularity that the Commission could readily understand the circumstances of each alleged violation in evaluating whether the conduct was consistent with the general professionalism standard.

The Commission's application of section 61–2–11 to a particular fact situation, including the meaning of "unworthy and incompetent," is a mixed question of law and fact. On appeal, an appellate court must inquire whether the Commission's determination was within the limits of reasonableness and rationality. *Department of Admin. Servs.*, 658 P.2d at 609–12; *Vance*, 671 P.2d at 128. So long as there is evidence of substance to support the Commission's factual findings, we defer to the Commission's factual findings. *Department of Admin. Servs.*, 658 P.2d at 608–09.

■ The record reveals substantial evidence to support the Commission's findings. The Commission determined that respondent was "incompetent" in the following instances: (1) He subjected his client to double commissions by listing the client's real estate without inquiring as to whether a prior listing was still in effect, relying only on the client's verbal assertion that it had been terminated. Respondent should have known that a listing agreement cannot be unilaterally terminated. (2) He offered to pay a finder's fee to an unlicensed person. (3) He amended an offer without obtaining the buyer's consent. (4) He failed to designate whether an existing equity of $950 was to be an additional cost to the buyer at closing or whether it was to be added to the mortgage amount, causing confusion between buyer and seller. (5) He prepared multiple documents involving the same piece of property, including four earnest money agreements, with no indication of which was to be binding. (6) He failed to account for the transfer of earnest monies from one document to another. (7) He added terms, however innocuous, to an agreement after it had been signed. The A.L.J. concluded that respondent had not been dishonest but lacked ability to structure a competent real estate transaction, because "in 31 years of wheeling and dealing Respondent has developed a habit of

cutting corners to the extent that he poses a threat to the public health, safety and welfare."

The A.L.J. found mitigating circumstances in several instances in which there was no damage to clients. However, it is not necessary to find damage in order to find a licensed real estate broker "unworthy or incompetent" because of the public interest in assuring that real estate brokers are honest, ethical, and competent. *Andersen v. Johnson*, 108 Utah 417, 160 P.2d 725, 727 (1945). The professional agent is answerable to the public "for breaches of his or her statutory duty," whether or not a breach results in damage to a client. *Dugan v. Jones*, 615 P.2d 1239, 1248 (Utah 1980).

Based on the Commission's application of the statute and case law to the factual findings of this case, we conclude that its determination that respondent violated Rules 11.f, 11.g, and Utah Code Ann. §§ 61–2–11(8) and (9) was reasonable and rational. We, therefore, reverse the district court's decision and reinstate the Commission's order to suspend respondent's real estate broker's license for one hundred fifty days to be followed by a three year probation.

BILLINGS and ORME, JJ., concur.